No. 2013-7126

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

TARELL JOYNER,

*Claimant-Appellant,*

— v. —

ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,

*Respondent-Appellee.*

_____

Appeal from the Court of Appeals for Veterans Claims in No. 11-3700,
Judge Lawrence B. Hagel

_____

## OPENING BRIEF AND ADDENDUM OF
## CLAIMANT-APPELLANT TARELL JOYNER

_____

Barton F. Stichman
Patrick A. Berkshire
National Veterans Legal Services
Program
1600 K Street, NW, Suite 500
Washington, DC 20006

Eric A. Shumsky
Rachel M. McKenzie
Daniel Habib
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Attorneys for Claimant-Appellant*

# CERTIFICATE OF INTEREST

Counsel for claimant-appellant certify the following:

1.    We represent Tarell Joyner.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented: Not applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented: None.

4.    The names of all law firms and the partners or associates that appeared for party or amicus now represented in trial court or agency or are expected to appear in this court are:

ORRICK, HERRINGTON & SUTCLIFFE LLP:
Eric A. Shumsky
Rachel M. McKenzie
Daniel Habib

NATIONAL VETERANS LEGAL SERVICES PROGRAM:
Patrick A. Berkshire
Barton F. Stichman

AMERICAN LEGION:
Mike Ayers

Dated:  November 14, 2013                    Respectfully submitted,

                                            /s/ Rachel M. McKenzie
                                            Orrick, Herrington & Sutcliffe LLP
                                            1152 15th Street, NW
                                            Washington, DC 20005
                                            (202) 339-8400

                                            *Attorney for Claimant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... v

STATEMENT OF RELATED CASES ..................................................... ix

INTRODUCTION ................................................................................... 1

JURISDICTION ..................................................................................... 2

STATEMENT OF THE ISSUES............................................................. 6

STATEMENT OF THE CASE ................................................................ 6

STATEMENT OF FACTS ...................................................................... 7

SUMMARY OF ARGUMENT ............................................................... 15

STANDARD OF REVIEW..................................................................... 19

ARGUMENT .......................................................................................... 19

I.    THE VETERANS COURT ERRED AS A MATTER OF LAW
      IN HOLDING THAT PAIN ALONE IS NOT A
      COMPENSABLE DISABILITY UNDER 38 U.S.C. §§ 1110
      AND 1117.................................................................................... 19

      A.    On Their Face, The Statutory Text And Regulatory
            Framework Treat Pain As A Disability ............................. 20

            1.    "Disability" refers to functional impairment, not
                  its underlying cause.................................................. 22

            2.    Pain is a functional impairment, regardless of its
                  underlying cause ....................................................... 25

      B.    Diagnosis Of An Underlying Condition Is Not Required
            To Establish That Disabling Pain Is Service-Connected .... 31

      C.    The Veterans Court's Decision Lacks Support ................... 34

      D.    This Court Should Remand In Light Of The Veterans
            Court's Legal Error ............................................................ 36

# TABLE OF CONTENTS
(continued)

**Page**

II.   THE VETERANS COURT ERRED AS A MATTER OF LAW
      IN REQUIRING PROOF OF A DIAGNOSED
      UNDERLYING CONDITION TO ESTABLISH
      ENTITLEMENT TO BENEFITS FOR DISABLING PAIN
      UNDER § 1117. ............................................................................... 38

CONCLUSION ....................................................................................... 45

# ADDENDUM

Judgment, Dated June 11, 2013 ............................................................ A6

Memorandum Decision, Dated May 20, 2013 .................................. A7-12

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Allen v. Brown,*
7 Vet. App. 439 (1995)..........................................................2, 16, 24, 25

*Asgrow Seed Co. v. Winterboer,*
513 U.S. 179 (1995) ...................................................................22

*Bailey v. Principi,*
351 F.3d 1381 (Fed. Cir. 2003) ...............................................4

*Blue Chip Stamps v. Manor Drug Stores,*
421 U.S. 723 (1975) ...................................................................20

*Boardman v. Prudential Ins. Co. of America,*
337 F.3d 9 (1st Cir. 2003) .......................................................30

*Brown v. Gardner,*
513 U.S. 115 (1994) ...................................................................31

*Caluza v. Brown,*
7 Vet. App. 498 (1995)...............................................................21

*Craig v. Chater,*
76 F.3d 585 (4th Cir. 1996)......................................................27

*Davis v. Principi,*
276 F.3d 1341 (Fed. Cir. 2002) .........................................23, 24

*Elkins v. Gober,*
229 F.3d 1369 (Fed. Cir. 2000) ...........................................5, 6

*Felden v. West,*
11 Vet. App. 427 (1998)............................................................24

*Gutierrez v. Principi,*
19 Vet. App. 1 (2004)....................................................18, 21, 42

*Holton v. Shinseki,*
   557 F.3d 1362 (Fed. Cir. 2009) ........................................................ 21

*Hunt v. Derwinski,*
   1 Vet. App. 292 (1991)....................................................................... 24

*Jones v. Nicholson,*
   24 Vet. App. 364 (Table), No. 04-2377, 2007 WL 470642 (Jan.
   21, 2007) ............................................................................................ 33

*Morgan v. Principi,*
   327 F.3d 1357 (Fed. Cir. 2003) .......................................................... 4

*Rodriguez v. Peake,*
   511 F.3d 1147 (Fed. Cir. 2008) ........................................................ 19

*Sanchez-Benitez v. Principi,*
   259 F.3d 1356 (Fed. Cir. 2001) .......................................... 29, 35, 36

*Sanchez-Benitez v. West,*
   13 Vet. App. 282 (1999)............................................................ *passim*

*Stankevich v. Nicholson,*
   19 Vet. App. 470 (2006).............................................................. 40, 41

*Szemraj v. Principi,*
   357 F.3d 1370 (Fed. Cir. 2004) .......................................................... 4

*Terry v. Principi,*
   340 F.3d 1378 (Fed. Cir. 2003) .................................................. 20, 22

*Williams v. Aetna Life Ins. Co.,*
   509 F.3d 317 (7th Cir. 2007)............................................................. 30

## STATUTES

38 U.S.C. § 101(16) ............................................................................... 33

38 U.S.C. § 1110............................................................................ *passim*

38 U.S.C. § 1117............................................................................ *passim*

38 U.S.C. § 1131 ................................................................. 11

38 U.S.C. § 7292 ............................................................. 3, 19

42 U.S.C. § 423 ............................................................. 26, 27

Veterans' Benefits Improvement Act of 1994, Pub. L. No. 103-446, 108
    Stat. 4645 (1994) ................................................ 42, 43, 44

## REGULATIONS

38 C.F.R. § 3.317 ............................................................ *passim*

38 C.F.R. § 4.1 ...................................................... 16, 24, 27

38 C.F.R. § 4.10 ............................................................... 24

38 C.F.R. § 4.20 .......................................................... 28, 29

38 C.F.R. § 4.40 ................................................. 1, 17, 27, 28

38 C.F.R. § 4.45 .......................................................... 28, 30

38 C.F.R. § 4.56 .......................................................... 28, 30

38 C.F.R. § 4.57 ............................................................... 30

38 C.F.R. § 4.59 ...................................................... 28, 29, 30

38 C.F.R. § 4.66 ............................................................... 30

38 C.F.R. § 4.67 ............................................................... 30

38 C.F.R. § 4.68 ............................................................... 30

38 C.F.R. § 4.71a .......................................................... 29

## OTHER AUTHORITIES

David Brown, *NIH Panel Unable To Pinpoint Cause of "Gulf War
    Syndrome,"* Wash. Post, April 30, 1994 ............................. 42

Dep't of Veterans Affairs, Adjudicating Claims Based on Service in the
    Gulf War and Southwest Asia, Training Letter 10-01

(Feb. 4, 2010) ................................................................ 22, 44

Dep't. of Veterans Affairs, Compensation for Certain Undiagnosed
    Illnesses, 60 Fed. Reg. 6660 (Feb. 3, 1995) ........................................ 41

Dep't of Veterans Affairs, Compensation for Undiagnosed Illnesses
    Under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317, VA Gen. Counsel
    Op. 8-98 (Aug. 3, 1998) ............................................. 39, 40, 41

Dep't of Veterans Affairs, Pain as the 5th Vital Sign Toolkit
    (October 2000 rev. ed.) ........................................................ 30

Dorland's Illustrated Medical Dictionary (32nd ed. 2012) ......... 23, 25, 26

H.R. Rep. No. 103-669 (1994) ................................................. 43

Merriam-Webster's Collegiate Dictionary (11th ed. 2012) ... 22, 23, 25, 26

Webster's Third New International Dictionary (1981) .............. 23, 25, 26

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, undersigned counsel states that no appeal from the same proceeding in the lower court was previously before this or any other appellate court.  No case known to undersigned counsel pending in this or any other court will directly affect or be directly affected by this court's decision in the pending appeal.

# INTRODUCTION

Tarell Joyner is a decorated Marine Corps veteran of Operation Enduring Freedom and Operation Iraqi Freedom.  Since his time in service, he has suffered from neck pain that limits his range of motion.  No one who has experienced pain could doubt that it can be seriously disabling—personally, socially, and professionally.  Recognizing that fact, the Department of Veterans Affairs ("VA") has made clear that "a part [of the musculoskeletal system] which becomes painful on use must be regarded as seriously disabled."  38 C.F.R. § 4.40.  Here, however, the Court of Appeals for Veterans Claims ("Veterans Court") concluded that Mr. Joyner was not entitled to disability benefits on the misguided theory that "pain alone … does *not* constitute a disability."  A12.  Because examining physicians were unable to attribute Mr. Joyner's neck pain to an identifiable underlying medical condition, the court reasoned that he had failed to demonstrate a compensable disability under 38 U.S.C. §§ 1110 or 1117.  A12.

That legal rule is flatly contrary to the plain meaning of the statutory provisions that make compensation available for "disability." *See* 38 U.S.C. §§ 1110, 1117.  The Veterans Court itself sensibly has

interpreted that term as an impairment in one's ability to function, rather than the *cause* of the impairment.   *Allen v. Brown*, 7 Vet. App. 439, 448 (1995) (en banc).  But even if the Veterans Court was right that proof of an underlying diagnosis is necessary to establish entitlement to benefits under § 1110, it had no basis to import that requirement into § 1117.  Congress enacted § 1117 with the express intent to ensure that Persian Gulf veterans (like Mr. Joyner) would not have to "show a current [diagnosed] disability to establish entitlement to benefits." A12.

The decision below should be vacated and remanded, so that veterans suffering disabling pain as a result of their service to the nation may recover the benefits to which they properly are entitled.

## JURISDICTION

On September 28, 2011, the Board of Veterans' Appeals ("Board") affirmed the Regional Office decision issuing a zero disability rating for Mr. Joyner's left knee patellofemoral syndrome and denying service connection for his neck pain.  A15, 31, 34-35.  On May 20, 2013, the Veterans Court issued a one-judge memorandum decision that (1) vacated the Board's denial of entitlement to a higher initial

disability rating for Mr. Joyner's left knee patellofemoral syndrome and remanded for readjudication; and (2) affirmed the Board's denial of service connection for his neck pain. A7-8, 12. The Veterans Court entered judgment on June 11, 2013. A6. Mr. Joyner timely appealed the portion of the Veterans Court's decision that affirmed the denial of service connection for his neck pain. A4; Dkt. No. 1-3, at 8.

This Court has jurisdiction over Mr. Joyner's neck claim because this appeal presents a pure question of "the validity of a decision of the [Veterans Court] on a rule of law." 38 U.S.C. § 7292(a). The Veterans Court did not disturb the Board's findings that Mr. Joyner suffers from neck pain, and that no physician has diagnosed an underlying condition or malady. *See infra* at 10-12. Rather, the Veterans Court said "[t]he question is whether his neck pain, which he asserts is chronic, is an undiagnosed illness within the meaning of section 1117 and [38 C.F.R.] § 3.317." A11-12. And the sole basis for the Veterans Court's decision was its legal conclusion that "pain alone … does *not* constitute a disability" entitling a veteran to benefits under either 38 U.S.C. §§ 1110 or 1117. A12. On appeal, Mr. Joyner argues that pain is indeed a compensable disability. That interpretation of the statutory term

3

"disability," if accepted, would require vacatur and remand for further consideration. Where, as here, "the decision below regarding a governing rule of law would have been altered by adopting the position being urged, this court has jurisdiction to entertain the matter." *Morgan v. Principi*, 327 F.3d 1357, 1363 (Fed. Cir. 2003); *see also, e.g.*, *Bailey v. Principi*, 351 F.3d 1381, 1384 (Fed. Cir. 2003) ("When the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the … claim, this court has treated the question … as a matter of law that we are authorized by statute to address.").

The same is true of Mr. Joyner's additional argument concerning § 1117. The only question before this Court is whether the Veterans Court correctly interpreted the requirements that § 1117 imposes on a claimant. As this Court has squarely held, "we do have jurisdiction to determine whether the legal requirement of the statute or regulation has been correctly interpreted in a particular context where the relevant facts are not in dispute, that is, whether there is an error of law." *Szemraj v. Principi*, 357 F.3d 1370, 1375 (Fed. Cir. 2004).

4

Moreover, the fact that the Veterans Court remanded Mr. Joyner's left knee patellofemoral syndrome claim does not deprive its denial of the neck pain claim of finality. *See Elkins v. Gober*, 229 F.3d 1369 (Fed. Cir. 2000). Where a veteran has asserted claims that involve distinct issues, they "may be treated as separable on appeal." *Id.* at 1376. This Court may review the Veterans Court's final decision as to one claim, notwithstanding that the Veterans Court remanded another, separable claim to the Board, as long as review of the finally decided claim "will not disrupt the orderly process of adjudication below with respect to the remanded claim." *Id.*

Here, Mr. Joyner's knee and neck claims present distinct issues. The former involves a diagnosed disabling condition and the factual question of the disability rating to which Mr. Joyner is entitled. A10-11. The latter involves the legal questions of whether pain is a compensable disability under §§ 1110 and 1117, and whether a § 1117 claimant, in particular, must demonstrate an underlying diagnosed condition that causes the pain. *See infra* at 6, 15-19. Because this Court's review of the neck claim will not affect the Board's disposition of the knee claim, it has jurisdiction. *See Elkins*, 229 F.3d at 1375-77

5

(jurisdiction proper over claims for headache and neck injury, even though Veterans Court remanded claim for back injury, because claims were not "intertwined" and "legal issues" were "distinct").

## STATEMENT OF THE ISSUES

1.  In ordinary usage, "disability" refers to a functional impairment, not its underlying cause.  Did the Veterans Court err as a matter of law in holding that pain, which indisputably impairs function, is not a compensable disability under 38 U.S.C. §§ 1110 and 1117?

2.  Section 1117 establishes presumptive service connection for Persian Gulf veterans whose functional impairments cannot be attributed to a diagnosed condition.  Did the Veterans Court err as a matter of law in holding that an underlying condition nevertheless must be diagnosed before a veteran can recover compensation for disabling pain under § 1117?

## STATEMENT OF THE CASE

On November 7, 2005, Mr. Joyner applied for compensation from the VA, claiming, among other disabilities, neck pain.   A372, 377.  On December 1, 2006, the VA's Winston-Salem, North Carolina, Regional Office issued a rating decision denying service connection for  neck pain.

A203.  On September 28, 2011, the Board of Veterans' Appeals likewise denied service connection for neck pain.  A15, 34-36.  On May 20, 2013, the Court of Appeals for Veterans Claims affirmed.  A11-12.  It entered judgment on June 11, 2013.  A6.

## STATEMENT OF FACTS

After graduating from high school in 2000, Tarell Joyner, then 18 years old, enlisted in the United States Marine Corps.  A16, 235-36, 590.  He served on active duty until his honorable discharge in 2004, rising to the rank of sergeant.  A16, 590.  Mr. Joyner completed one tour in the Persian Gulf, where he served in both Operation Enduring Freedom and Operation Iraqi Freedom.  A235, 589-90.  His primary specialty was as a motor vehicle operator, and he drove in and commanded convoys that traveled between Kuwait and Iraq.  A53, 55-57, 590.  Mr. Joyner earned numerous decorations, including the Global War on Terrorism Service Medal, the Global War on Terrorism Expeditionary Medal, the Navy and Marine Corps Overseas Service Ribbon, the Rifle Expert Badge, the Good Conduct Medal, the Sea Service Deployment Ribbon, and the National Defense Service Medal.  A589-90.

7

Twice during his service, Mr. Joyner received treatment for neck pain.  In October 2002, he was admitted to the emergency room at Roanoke-Chowan Hospital in Ahoskie, North Carolina, complaining of sharp neck pain that had started that morning after he heard his neck pop.  A282-83, 285.  A physical examination revealed a muscle spasm and decreased range of motion, and the clinical impression was an acute myofascial cervical strain and muscle spasm.  A284.  Mr. Joyner was diagnosed with "neck strain with muscle spasm," prescribed a muscle relaxant and an anti-inflammatory, and discharged.  A287-88.   In April 2004, while stationed at Camp Fuji in Japan, Mr. Joyner reported to sick call complaining of a neck cramp.  A60, 421.  He explained that he had been participating in physical training the previous day, "and the next day I woke up that morning I had a real bad cramp in my neck …. I couldn't turn it to the left."  A60, 421.  A military physician diagnosed a neck strain, prescribed a muscle relaxant and an anti-inflammatory, and ordered four days of light duty.  A421.  Mr. Joyner's separation examination in September 2004 indicated that his neck was normal. A422.[1]

_____

[1] Post-discharge, in March and April 2005, Mr. Joyner sought

8

In November 2005, Mr. Joyner applied for compensation from the VA, claiming post-traumatic stress disorder ("PTSD"), a knee disability, and a "neck condition." A372, 377-78. He later added a claim for a low back condition. A213. Mr. Joyner underwent a contract disability examination in 2006. A266. He told the examining physician that he had strained his neck in 2002, and that he suffered from muscle spasms every two to three months that worsened with heavy repetitive use. A266. Mr. Joyner said at that time that his neck pain was "not significantly debilitating," and that he "has never lost work due to this condition." A266. His neck examination and cervical spine x-ray were "normal," and the examining physician diagnosed a "[c]ervical strain— currently resolved with normal exam." A267, 269. Mr. Joyner also said at that time that his knee condition "has never been incapacitating." A267.

The VA's Winston-Salem, North Carolina Regional Office ("RO") subsequently issued a rating decision denying Mr. Joyner entitlement

---

medical attention for neck, back, shoulder, and jaw pain following a car accident. A343-47. A CT scan of the neck was negative, but pain was diagnosed, and Mr. Joyner was treated with anti-inflammatories, muscle relaxants, and chiropractic care. A35, 343-47. The Board noted the accident, and did not find that it, rather than an in-service incident, caused Mr. Joyner's current neck pain. A35; *see also* A602.

to service connection for his neck pain, which the RO denominated a "cervical strain." A203. The RO acknowledged that "there is a diagnosis of neck strain during your military service," but found that "the current medical evidence of record does not show continued treatment for this condition." A210. The RO found that "[t]he service medical records do not establish that the neck strain became chronic during your military service," and noted that "[t]he VA examination indicated that the cervical strain has resolved and the examination is now normal." A210. The RO accordingly concluded that "[a]lthough there is a record of treatment in service for neck pain, no permanent residual or chronic disability subject to service connection is shown by the service medical records or demonstrated by evidence following service." A210; *see also* A125-26 (RO statement of case) (same). The RO also denied service connection for Mr. Joyner's PTSD, right knee patellofemoral syndrome ("PFS"), and low back condition. A208-10. It granted service connection as to Mr. Joyner's left knee PFS, but issued a zero disability rating. A206.

Mr. Joyner appealed to the Board of Veterans Appeals ("Board"). On June 1, 2010, he testified at a videoconference hearing that he

continued to suffer from neck pain.  A47, 59-60, 66-69.  While the examining physician in 2006 noted that Mr. Joyner did not consider his neck pain "significantly debilitating" at that time, A266, his 2010 Board testimony indicates that his pain was more serious.  Mr. Joyner testified that he "had a muscle spasm in my neck" during his active duty service and "I keep having them all the time.  I've been [g]oing to the doctor for it also….  I came in the service 100 percent and I left—I'm living now with my neck hurting me."  A60.  He testified that, since his discharge, "I have pain, stiffness, and I have a cramp….  I can't turn my neck like no further than—I can't hardly turn my neck to this side because I have a cramp there.  I have … muscle spasms."  A68.  Mr. Joyner confirmed that he has suffered those symptoms since his in-service injuries and continues to seek treatment for them.  A67-69.  He also testified that pain in his left knee limited his activities.  A50.

On September 28, 2011, the Board affirmed the denial of service connection for Mr. Joyner's neck pain.  A15, 34-35.  It concluded that Mr. Joyner "currently is not shown to have a neck condition due to an injury or other event of his active service."  A17.  Relying only on 38 U.S.C. §§ 1110 and 1131—with no mention of 38 U.S.C. § 1117, a

benefits statute that applies specifically to Persian Gulf veterans—the Board reasoned that "[t]he existence of a current disability is the cornerstone of a claim for VA disability compensation." A35. It concluded that "[a]s there is no currently diagnosed neck condition, service connection is clearly not warranted." A35. Acknowledging Mr. Joyner's testimony that he currently suffered from neck pain that limited his range of motion, the Board agreed that Mr. Joyner "is competent to report his symptoms." A35; *see also, e.g.*, A249 (psychiatrist finding, in 2006 contract examination, that Mr. Joyner was "a reliable historian"). But, the Board said, "the issue of whether [Mr. Joyner's] symptoms of neck pain constitute a diagnosed disability must be determined by competent evidence of record." A35. And the Board found that Mr. Joyner was not competent to render a diagnosis based on his symptoms. A35 ("[Mr. Joyner] has not been shown to have the requisite medical training or knowledge to provide a competent opinion as to the diagnosis in this case, where such a diagnosis is not observable by a lay person.").

As to Mr. Joyner's other claims, the Board remanded for further development of the record regarding service connection for Mr. Joyner's

PTSD, right knee PFS, and low back condition, A37, but affirmed the zero disability rating for his left knee PFS, A31. The Board stated that "[w]hile [Mr. Joyner] testified in 2010 that he had pain in his knee and his activities were limited, to include playing with his son, his testimony is contradicted by his own account, *i.e.* reports to the VA examiner in 2006 that he had no particular treatment for his knee other than Motrin and that the condition had never been incapacitating for him." A30.

Mr. Joyner appealed to the Court of Appeals for Veterans Claims ("Veterans Court"). Regarding his left knee PFS, the VA conceded, and the Veterans Court agreed, that in treating as dispositive the alleged inconsistency in Mr. Joyner's statements regarding the extent of his impairment, "the Board failed to account for the lapse in time between the January 2006 VA examination and the June 2010 Board hearing." A10. Accordingly, the Veterans Court concluded, as "the [VA] concedes," that the Board's denial of Mr. Joyner's claim to a higher disability rating for his left knee PFS had to be "vacated and remanded for readjudication." A10. The Veterans Court noted that on remand,

"Mr. Joyner is … free to submit additional evidence and argument …."
A11.

Mr. Joyner also challenged the Board's decision to deny service connection for his neck pain.  Specifically, he argued that the Board failed to address his entitlement as a Persian Gulf veteran to a presumption of service connection for his neck pain under 38 U.S.C. § 1117 because it is a chronic disability resulting from an undiagnosed illness.  A606-09.  In little more than a page of analysis, the Veterans Court affirmed the denial of compensation.  A11-12.  It acknowledged that "[t]here is no dispute that Mr. Joyner has qualifying service in the Persian Gulf."  A11.  But, the Veterans Court said, "[t]he question is whether his neck pain, which he asserts is chronic, is an undiagnosed illness within the meaning of section 1117 and § 3.317."  A11-12.  Stating that "[i]t is well settled that pain alone—admittedly the only symptom Mr. Joyner experiences—does *not* constitute a disability," the Veterans Court concluded that "[t]here is no evidence of record, medical or otherwise, that Mr. Joyner suffers from *any* disability, undiagnosed or otherwise."  A12.  As authority for its assertion that pain alone is not a disability, the Veterans Court cited only its own prior, unsupported

statement that "pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted" under § 1110. *Sanchez-Benitez v. West*, 13 Vet. App. 282, 285 (1999); *see* A12.  By arguing to the contrary, the Veterans Court said, Mr. Joyner was "attempt[ing] … to evade the statutory requirement that he show a current disability to establish entitlement to benefits," A12 (citing 38 U.S.C. § 1110), and "attempt[ing] to conflate the absence of a disability … with the presence of a disability that is undiagnosed," A12. The Veterans Court accordingly concluded that "the Board did not err in not considering" Mr. Joyner's entitlement to benefits under § 1117. A12.

Mr. Joyner timely appealed.  A4.

## SUMMARY OF ARGUMENT

**I.**  Mr. Joyner is entitled to benefits under 38 U.S.C. §§ 1110 and 1117.  The Veterans Court's contrary conclusion resulted from a legally erroneous interpretation of the statutes.  Under §§ 1110 and 1117, a veteran must suffer a "disability" to qualify for benefits.  The Veterans Court affirmed the denial of service connection for Mr. Joyner's neck

condition based solely on its conclusion that "[i]t is well settled that pain alone—admittedly the only symptom Mr. Joyner experiences— does *not* constitute a disability."  A12 (citing *Sanchez-Benitez*, 13 Vet. App. at 285).  Far from "well settled," that conclusion embraced legal error.

In ordinary usage, the term "disability" refers to a functional incapacitation or impairment, not its particular cause.  Consistent with that usage, the VA has defined disability as "the average impairment in earning capacity" that results from "all types of diseases and injuries encountered as a result of or incident to military service … and their residual conditions in civil occupations."  38 C.F.R. § 4.1.  And the Veterans Court itself elsewhere has held that "the term 'disability' as used in [38 U.S.C. §§ 1101-1163], and specifically in § 1110, should be construed to refer to impairment of earning capacity due to disease, injury, or defect, *rather than to the disease, injury, or defect itself*." *Allen*, 7 Vet. App. at 448 (emphasis added).

Pain falls squarely within this definition.  Pain undoubtedly can impair a veteran's capacity to work and earn a living.  That is true regardless of whether the pain can be attributed to a particular

diagnosed underlying medical condition.  And, as the Social Security Act makes clear, when Congress wants a claimant suffering from disabling pain to provide such a diagnosis as a condition of obtaining benefits, it says so expressly.  Recognizing that pain is, by itself, impairing, the VA has stated that "a part which becomes painful on use must be regarded as seriously disabled."  38 C.F.R. § 4.40.

Moreover, as the interplay between §§ 1110 and 1117 makes clear, the requirement under § 1110 that a claimant prove that his or her disability "result[s] from a personal injury suffered or disease contracted in line of duty" does not carry with it an additional requirement that the claimant provide a diagnosis of the medical condition that causes his or her disabling pain.

A remand for further consideration, under both statutes, of Mr. Joyner's claim to benefits for his neck pain is required.

**II.**  Even if § 1110 did require a veteran to prove the particular, diagnosed underlying condition that caused his or her pain, § 1117 expressly relieves Persian Gulf veterans like Mr. Joyner of any such requirement.  Section 1117 and its implementing regulation provide that a Persian Gulf veteran who suffers from "a chronic disability

17

resulting from … [a]n *undiagnosed* illness" that manifests itself before
December 31, 2016, is entitled to a presumption of service connection.
38 U.S.C. § 1117(a) (emphasis added); *see* 38 C.F.R. § 3.317(a)(1)(i).
And the statute specifies that "muscle pain" and "joint pain"—which the
Veterans Court acknowledged "Mr. Joyner experiences," A12—
constitute "signs or symptoms that may be a manifestation of an
undiagnosed illness."   38 U.S.C. § 1117(g)(4), (5); *see also* 38 C.F.R.
§ 3.317(b)(4), (5).

   As the Veterans Court itself has recognized, "Congress has
decided as a matter of policy, stemming at least in part from difficulty
of proof, that even though a Persian Gulf War veteran's symptoms may
not at this time be attributed to a specific disease, the symptoms may
nonetheless be related to conditions in the Southwest Asia theater of
operations and, for that reason, are presumed to be service connected."
*Gutierrez v. Principi*, 19 Vet. App. 1, 8 (2004).  The Veterans Court
therefore erred as a matter of law in requiring Mr. Joyner to
demonstrate an underlying diagnosis without which he could not obtain
benefits for his neck pain under § 1117.  For this reason, too, the

decision of the Veterans Court must be vacated, and the case remanded for further consideration of Mr. Joyner's entitlement to benefits.

## STANDARD OF REVIEW

This Court has jurisdiction to review the decision of the Veterans Court "with respect to the validity of a decision of the [Veterans Court] on a rule of law or of any statute or regulation … or any interpretation thereof … that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a).  This Court "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions," *id.* § 7292(d), and in doing so, reviews the Veterans Court's legal determinations de novo, *Rodriguez v. Peake*, 511 F.3d 1147, 1152 (Fed. Cir. 2008).

## ARGUMENT

## I.     THE VETERANS COURT ERRED AS A MATTER OF LAW IN HOLDING THAT PAIN ALONE IS NOT A COMPENSABLE DISABILITY UNDER 38 U.S.C. §§ 1110 AND 1117.

The Veterans Court decided that Mr. Joyner is not entitled to benefits for his ongoing neck pain solely on the ground that "[i]t is well settled that pain alone—admittedly the only symptom Mr. Joyner

experiences—does *not* constitute a disability." A12. That conclusion was legally erroneous.

Although the Veterans Court deemed the matter "well settled," the only authority it cited for the proposition that pain is not a compensable disability was its own, unsupported statement to that effect in *Sanchez-Benitez*, 13 Vet. App. 282. Contrary to that bald assertion, the text of §§ 1110 and 1117 and their implementing regulations make clear that when a veteran is suffering from pain—as Mr. Joyner undisputedly is here—the fact that he cannot attribute his pain to any particular underlying condition does not foreclose benefits.

### A.    On Their Face, The Statutory Text And Regulatory Framework Treat Pain As A Disability.

"'The starting point in every case involving construction of a statute is the language itself.'" *Terry v. Principi*, 340 F.3d 1378, 1382 (Fed. Cir. 2003) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975)). Section 1110 provides that any veteran is entitled to compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty," as long as he or she was "discharged or released" from the military "under

conditions other than dishonorable." Thus, a veteran seeking compensation under § 1110 must establish "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service—the so-called 'nexus' requirement." *Holton v. Shinseki*, 557 F.3d 1362, 1366 (Fed. Cir. 2009); *see also, e.g.*, *Caluza v. Brown*, 7 Vet. App. 498, 506 (1995), *aff'd*, 78 F.3d 604 (Fed. Cir. 1996).

Section 1117 provides that Persian Gulf veterans may obtain compensation for "a qualifying chronic disability that became manifest" either "during service on active duty … in the Southwest Asia theater of operations" or "to a degree of 10 percent or more during the presumptive period." 38 U.S.C. § 1117(a). Thus, a Persian Gulf veteran who suffers from a qualifying chronic disability that manifests during service or "during the presumptive period established by the Secretary [of Veterans Affairs]" is "entitle[d] to compensation on a presumptive basis," without having to prove service connection. *Gutierrez*, 19 Vet. App. at 6. Relevant here, the statute defines a

"qualifying chronic disability" as "a chronic disability resulting from …

[a]n undiagnosed illness."  38 U.S.C. § 1117(a)(2)(A).

"There is no dispute that Mr. Joyner has qualifying service in the

Persian Gulf" under § 1117.  A11.[2]  Rather, the Veterans Court's

decision turned entirely on its interpretation of what constitutes a

"disability" under §§ 1110 or  1117, and specifically on its conclusion

that "pain alone … does *not* constitute a disability" under either statute.

A12.

### 1.    "Disability" refers to functional impairment, not its underlying cause.

"In the absence of an express definition," the presumption is that

"Congress intended to give the[] words [in a statute] their ordinary

meanings."  *Terry*, 340 F.3d at 1382-83 (citing *Asgrow Seed Co. v.*

*Winterboer*, 513 U.S. 179, 187 (1995)).  In ordinary usage, "disability"

---

[2] Pursuant to a statutory delegation of authority, *see* 38 U.S.C. § 1117(d), the VA defines "the Southwest Asia theater of operations" to include, as relevant here, Iraq and Kuwait.  38 C.F.R. § 3.317(e)(2).  The VA has also interpreted the statute to "apply to any veteran who served in Southwest Asia," whether during the first Gulf War of 1990-91, or at any subsequent time.  Dep't of Veterans Affairs, Adjudicating Claims Based on Service in the Gulf War and Southwest Asia, Training Letter 10-01, at 1 (Feb. 4, 2010), *available at* A614.  And the VA has stated that the "presumptive period" runs until December 31, 2016.  38 C.F.R. § 3.317(a)(1)(i).

means "the condition of being disabled," that is, the "inability to pursue an occupation because of a physical or mental impairment." Merriam-Webster's Collegiate Dictionary 354 (11th ed. 2012); *accord Davis v. Principi*, 276 F.3d 1341, 1344 (Fed. Cir. 2002) (noting that the Merriam-Webster's definition reflects "common usage"); *see also* Webster's Third New International Dictionary 642 (1981) (defining "disability" as "inability to do something" or "deprivation or lack esp. of physical, intellectual, or emotional capacity or fitness"); Dorland's Illustrated Medical Dictionary 433 (32nd ed. 2012) (defining "disability" as "an incapacity or lack of the ability to function normally; it may be either physical or mental or both"). To be "disabled" is to be "incapacitated by illness or injury" or "physically or mentally impaired in a way that substantially limits activity especially in relation to employment or education." Merriam-Webster's Collegiate Dictionary at 355; *see also* Webster's Third at 642 (defining "disabled" as "incapacitated by or as if by illness, injury, or wounds").

The term "disability" accordingly refers to a functional incapacitation or impairment, not its particular cause. As a matter of plain text, a veteran who suffers an "inability," an "incapacit[y]," or an

23

"impair[ment]" of functional capability—whatever its cause or its nature—is "disabled." Indeed, in the context of a statutory scheme whose "purpose" is to compensate veterans who have "suffered a loss that is reflected in the decreased ability to earn a living for themselves and their families," *Hunt v. Derwinski*, 1 Vet. App. 292, 296 (1991), it is logical to define "disability" with reference to an impairment of earning capacity, not its underlying cause. The VA in fact has done just that, defining disability in general as "the average impairment in earning capacity" that results from "all types of diseases and injuries encountered as a result of or incident to military service … and their residual conditions in civil occupations." 38 C.F.R. § 4.1; *see also, e.g.*, *Davis*, 276 F.3d at 1346 (approving this definition); *Felden v. West*, 11 Vet. App. 427, 431 (1998) (same). For that reason, "[t]he basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment." 38 C.F.R. § 4.10.

Consistent with the VA's definition, the Veterans Court previously held that "the term 'disability' as used in [38 U.S.C. §§ 1101-1163], and

specifically in § 1110, should be construed to refer to impairment of
earning capacity due to disease, injury, or defect, *rather than to the
disease, injury, or defect itself*." *Allen*, 7 Vet. App. at 448 (emphasis
added). Indeed, "such definition mandates that *any additional
impairment* of earning capacity resulting from an already service-
connected condition, regardless of whether or not the additional
impairment is itself a separate disease or injury caused by the service-
connected condition, shall be compensated." *Id.* That is, functional
impairment may be compensable even it is not, in itself, a "disease or
injury." Thus, even the Veterans Court has recognized that disability is
the impairment, not its underlying cause.

### 2.    Pain is a functional impairment, regardless of its underlying cause.

Pain fits comfortably within this definition of disability. Pain
alone is a physical impairment—recognized as the key attribute of
disability in all of the sources discussed above—regardless of whether
an identifiable condition underlies it, because it diminishes the body's
ability to function (as anyone who has endured pain knows). *See, e.g.*,
Dorland's at 922 (including "pain" and "loss of joint motion" as
"[e]xamples" of an "impairment," which is defined as "any abnormality

25

of … or loss of the function of, a body part, organ, or system"); Merriam-Webster's Collegiate Dictionary at 622 (defining "impaired" as "functionally defective"); Webster's Third at 1131 (defining "impair[ed]" as "diminish[ed] in quantity, value, excellence, or strength").  Thus, pain, regardless of whether it can be associated with a particular diagnosed underlying cause, is undoubtedly capable of "impairing" a veteran's capacity to work and earn a living.

An examination of other statutory schemes demonstrates that when Congress wants to require that a claimant provide a diagnosis of an underlying condition to obtain compensation for disabling pain, it does so explicitly.  Consistent with the definitions discussed above (at 22-25), the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …."  42 U.S.C. § 423(d)(1)(A).  But unlike §§ 1110 and 1117, the Social Security Act goes on to state that "[a]n individual's statement as to pain … shall not alone be conclusive evidence of disability as defined in this section."  42 U.S.C. § 423(d)(5)(A).  Rather, "there must be medical signs and findings, established by medically acceptable clinical or laboratory

diagnostic techniques, which show the existence of a medical

impairment that results from anatomical, physiological, or

psychological abnormalities which could reasonably be expected to

produce the pain …." *Id.* Courts have construed this language to mean

that under the Social Security Act, "in order for pain to be found

disabling, there must be objective medical evidence establishing some

condition that could reasonably be expected to produce the pain

alleged." *Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) (superseded

by statute on other grounds). No such language exists in §§ 1110 or

1117.

Nor does such language exist in the implementing regulations. To

the contrary, recognizing that pain is, by itself, disabling, the VA

features pain prominently in its schedule for evaluating the "degrees of

disability." 38 C.F.R. § 4.1. For example, 38 C.F.R. § 4.40, which

addresses the relevance of functional loss in rating disabilities of the

musculoskeletal system—including the neck—provides that "[d]isability

of the musculoskeletal system is primarily the inability … to perform

the normal working movements of the body," and that "[i]t is essential

that the examination on which ratings are based adequately portray …

27

functional loss." To that end, the regulation specifies that "[f]unctional loss … may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion" and states explicitly that "a part which becomes painful on use must be regarded as seriously disabled." *Id.*

Similarly, 38 C.F.R. § 4.45 provides that "[a]s regards the joints …. [i]nquiry will be directed to … [p]ain on movement." Under § 4.56, the "cardinal signs" of muscle disabilities include "fatigue-pain." And § 4.59 makes plain that "[t]he intent of the [disability rating] schedule is to recognize painful motion with joint or periarticular pathology as *productive of disability*," and "to recognize actually painful … joints, due to healed injury, as entitled to at least the minimum compensable rating." (Emphasis added).

Underscoring that the diagnosis of an underlying condition is not required to demonstrate disability, VA regulations explicitly supply a mechanism for rating a disability where functional loss due to pain cannot be attributed to a listed diagnosis. In that circumstance, 38 C.F.R. § 4.20 provides that "it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but

the anatomical localization and symptomatology are closely analogous." *See also* 38 C.F.R. § 3.317(a)(5).  In other words, § 4.20 permits the VA to assign a disability rating on the basis of pain alone.  *Sanchez-Benitez v. Principi*, 259 F.3d 1356, 1364 (Fed. Cir. 2001) (Mayer, C.J., dissenting).[3]  In Mr. Joyner's case, the disability rating schedule contains a formula for "diseases and injuries of the spine" that takes into account precisely those conditions Mr. Joyner identified in his Board hearing testimony: limited range of motion and muscle spasm, A60, 68.  *See* 38 C.F.R. § 4.71a (diagnostic code for "Diseases and Injuries of the Spine").

Because a series of VA regulations (including those discussed above) provide that pain can be the basis for evaluating the extent of disability, VA regulations also establish guidelines for undertaking accurate and objective measurement of a claimant's pain.  *See, e.g.*, 38 C.F.R. § 4.59 (in rating "painful motion," "the facial expression,

---

[3] There was no substantive dispute between Chief Judge Mayer and the *Sanchez-Benitez* majority as to whether pain alone is a compensable disability under § 1110.  As explained below (at 35-36), the majority did not decide that question because it concluded that the Court did not have jurisdiction to consider it in that case.  Chief Judge Mayer dissented because he would have found that the Court did have jurisdiction, and accordingly went on to address the merits.

wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to the affected joints"); *see also, e.g., id.* §§ 4.45(f), 4.56(c), 4.57, 4.66, 4.67, 4.68.  Other VA materials similarly set forth standardized procedures for assessing pain.  *See* Dep't of Veterans Affairs, Pain as the 5th Vital Sign Toolkit (October 2000 rev. ed.), *available at* http://www.va.gov/PAINMANAGEMENT/docs/ TOOLKIT.pdf.  Under these regulations, the extent of a veteran's disability is measured by the extent to which a veteran's pain limits his functional capabilities (rather than, for instance, his subjective experience of pain).  That assessment can be made objectively, as courts have recognized in non-VA cases.  *See, e.g., Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322 (7th Cir. 2007) ("A distinction exists however, between the amount of fatigue or pain an individual experiences, which … is entirely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured."); *Boardman v. Prudential Ins. Co. of America*, 337 F.3d 9, 16 n.5 (1st Cir. 2003) (same).

\*    \*    \*

In short, giving the statutory term "disability" its ordinary meaning—and, to the extent necessary, applying "the rule that interpretive doubt is to be resolved in the veteran's favor," *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (superseded by statute on other grounds)—pain alone must be considered a disability under §§ 1110 and 1117, without regard to whether an underlying condition causing the pain has been diagnosed.

## B.    Diagnosis Of An Underlying Condition Is Not Required To Establish That Disabling Pain Is Service-Connected.

As noted above (at 20-21), § 1110 requires a claimant to prove service connection—that his or her disability "result[s] from a personal injury suffered or disease contracted in line of duty."  The statutory provisions governing proof of service connection in different circumstances confirm that there is no additional requirement that the claimant demonstrate that he or she has been diagnosed with an underlying condition that causes the disability.  That is particularly clear from the interplay between §§ 1110 and 1117.

31

To qualify for benefits under § 1117, just as under § 1110, a veteran must suffer from a service-connected disability. But under § 1117, unlike under § 1110, a Persian Gulf veteran, such as Mr. Joyner, who suffers from "a chronic disability resulting from … [a]n undiagnosed illness" that manifests during the presumptive period is entitled to a presumption of service connection. 38 U.S.C. § 1117(a). The fact that Congress established only a presumption of service connection for veterans meeting § 1117's requirements indicates that regardless of whether those requirements are met, disabilities caused by undiagnosed conditions are compensable under § 1110—the difference is just that under § 1110, the claimant must affirmatively prove service connection.

To be sure, diagnosis of an underlying medical condition may make it easier for a claimant to affirmatively prove service connection for disabling pain, and may even constitute sufficient proof in some cases. But it is not necessary. If, for example, a veteran can show that while serving, he was knocked down and hit his head, and from that moment on suffered headaches that affected his ability to function, he has demonstrated a disability resulting from a personal injury suffered

32

in the line of duty, regardless of whether a doctor was able to diagnose the medical condition causing his head pain—such as bruising or bleeding of the brain. *Cf. Jones v. Nicholson*, 24 Vet. App. 364 (Table), No. 04-2377, 2007 WL 470642, at *2 (Jan. 21, 2007) (where veteran suffered from "migraine headaches of unknown etiology," or cause, the Board erred in denying service connection without "address[ing] two statements from fellow reservists, who stated that they had observed [the veteran] fall and hit his head while on reserve duty and remembered him continuing to complain of head pain"). Likewise, here, Mr. Joyner should be given the opportunity to demonstrate that his current neck pain is linked to an in-service incurrence (or to avail himself of the § 1117 presumption of service connection), regardless of the fact that physicians have not been able to diagnose him with an underlying neck condition. This plain reading of the statute is buttressed by 38 U.S.C. §101(16), which defines "'service-connected' … with respect to disability" to mean that the disability was "incurred or aggravated … in line of duty in the active military, naval, or air service," but makes no reference to a requirement that the medical condition underlying the disability be diagnosed.

33

## C.    The Veterans Court's Decision Lacks Support.

The Veterans Court did not analyze the ordinary meaning of the text of the relevant statutes or the related regulatory framework discussed above.  Instead, it excluded pain from the definition of disability based solely on its own decision in *Sanchez-Benitez*, 13 Vet. App. 282.  A12.  But the Veterans Court's statement in *Sanchez-Benitez*—that "pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted," 13 Vet. App. at 285—was the purest ipse dixit.  In that case, too, the Veterans Court relied on no statute, regulation, case law, or policy justification to support its conclusion.  Indeed, the Veterans Court acknowledged that the VA regulations discussed above support the "well established" proposition that "pain often warrants separate and even additional consideration during the course of rating a disability." *Id.*  But, despite having done so, the Veterans Court did not attempt to reconcile those regulations with its conclusion that pain alone is not a compensable disability.  As demonstrated above, the Veterans Court's interpretation of § 1110 in *Sanchez-Benitez* (and its unwarranted extension of that

34

holding to § 1117 in the decision on appeal here) is contrary to the unambiguous text of the statutes. The Veterans Court has exceeded its legal authority by imposing an additional requirement, neither enacted nor intended by Congress, on claimants.

On appeal, this Court did not approve the Veterans Court's bald assertion that pain alone is not a disability. Instead, this Court concluded that it could not resolve the "interesting, indeed perplexing, question" of whether pain alone is a disability, because that question was not properly presented for review. *Sanchez-Benitez*, 259 F.3d at 1361. The only statutes at issue in *Sanchez-Benitez* were §§ 1110 and 1131, so the veteran was required to prove nexus with direct evidence rather than through a statutory presumption. The Veterans Court had found that there was a "plausible basis" in the record to support the Board's factual finding of no nexus between the veteran's current condition and any in-service injury. *Id.*; *see also* 13 Vet. App. at 285-86. Because there was "fact-finding by the Board, affirmed by the Veterans Court," that there was no sufficient showing of nexus, there was no basis for compensation, regardless of whether a pain-alone claim can be compensable. 259 F.3d at 1362. This Court therefore concluded that it

lacked jurisdiction to reach the latter question, and "dismiss[ed] that portion of [the] appeal." *Id.* at 1362, 1363.

Here, this Court has jurisdiction to decide the "interesting, indeed perplexing, question" it did not address in *Sanchez-Benitez*. *See supra* at 2-6. For the reasons explained above, the Veterans Court's denial of Mr. Joyner's "neck pain claim for failure to prove a specific underlying malady or condition was … not in accordance with law, rule, or regulation." *Sanchez-Benitez*, 259 F.3d at 1364 (Mayer, C.J., dissenting).

### D. This Court Should Remand In Light Of The Veterans Court's Legal Error.

Because the Veterans Court affirmed the rejection of Mr. Joyner's neck pain claim based solely on an erroneous interpretation of "disability," this Court should vacate the decision, and remand for the agency to make requisite factual findings.

As to § 1110, it remains to be determined whether Mr. Joyner's pain can be connected to an in-service disease or injury. *See* 38 U.S.C. § 1110; *see also Sanchez-Benitez*, 259 F.3d at 1361 (so recognizing in dicta). As noted above (at 8-9), Mr. Joyner presented uncontested evidence based on medical records that he suffered a cervical strain,

muscle spasms, and neck pain during his active duty service. *See also* A8. In his hearing before the Board, Mr. Joyner testified that he continues to suffer from neck pain, stiffness, cramps, and limited range of motion, and has sought treatment for those impairments. *See supra* at 10-11. In denying compensation, neither the Board nor the Veterans Court questioned Mr. Joyner's proof of in-service injury or current neck pain. But they made no findings as to nexus, relying instead on the erroneous legal rule described above. A34-35 (Board concluding that Mr. Joyner was not entitled to compensation because while he had "symptoms of neck pain," "a chronic neck condition has not been diagnosed"); A12 (Veterans Court conclusion that neck pain cannot be a disability). Accordingly, the case must be remanded to consider Mr. Joyner's evidence regarding nexus, and the extent to which his neck pain has impaired his earning capacity.

As to § 1117, neither the Board nor the Veterans Court addressed whether Mr. Joyner is entitled to compensation under that statute, apart from the erroneous legal conclusion that pain is not a disability. A12. As discussed above (at 22), there is no dispute that Mr. Joyner has qualifying Persian Gulf service. A11. Nor is there any dispute that he

began suffering from neck pain during service and currently suffers from neck pain.  A8, 11-12; *see also* A68.  Moreover, neither the Board nor the Veterans Court made a factual finding attributing Mr. Joyner's neck pain to a diagnosed condition; indeed, the premise of both decisions was that Mr. Joyner has no current diagnosed condition.  *See* A12, 34-35.  As a qualifying Persian Gulf veteran who is suffering pain that has not been attributed to a diagnosed condition, Mr. Joyner is presumptively entitled to service connection under § 1117 so long as other statutory requirements are met.  Accordingly, a remand is appropriate.

## II.    THE VETERANS COURT ERRED AS A MATTER OF LAW IN REQUIRING PROOF OF A DIAGNOSED UNDERLYING CONDITION TO ESTABLISH ENTITLEMENT TO BENEFITS FOR DISABLING PAIN UNDER § 1117.

Even if the Veterans Court were right that "pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted" under § 1110, *Sanchez-Benitez*, 13 Vet. App. at 285, pain alone plainly can entitle Persian Gulf veterans to compensation under § 1117. The explicit purpose of § 1117 is to relieve a Persian Gulf veteran, such as Mr. Joyner, of having to show that a diagnosed condition caused his

impairing pain.  For this reason too, the Veterans Court's decision

should be vacated, and the case remanded for further consideration of

Mr. Joyner's claim.

As noted above (at 21-22), a "qualifying chronic disability" for

which a Persian Gulf veteran is entitled to compensation under § 1117

"means a chronic disability resulting from … [a]n undiagnosed illness."

38 U.S.C. § 1117(a)(2)(A).  The regulations confirm that compensation is

payable for a chronic disability under § 1117 when "such disability …

[b]y history, physical examination, and laboratory tests cannot be

attributed to any known clinical diagnosis."  38 C.F.R. § 3.317(a)(1)(ii)

(emphasis added).  The VA has clarified that neither the statute nor the

implementing regulation require that a veteran demonstrate that his or

her impairment could not, under any circumstances, be attributed to a

known condition.  Rather, "the pertinent inquiry is whether, under the

circumstances of the particular veteran's case, the signs or symptoms

manifested by the veteran can be attributed to a recognized disease or

injury suffered by the veteran."  Dep't of Veterans Affairs,

Compensation for Undiagnosed Illnesses Under 38 U.S.C. § 1117 and 38

C.F.R. § 3.317, VA Gen. Counsel Op. 8-98, at 2 (Aug. 3, 1998), *available*

*at* http://www.va.gov/ogc/docs/1998/prc08-98.doc; *see also id.* at 3 ("It is
… irrelevant whether the signs or symptoms exhibited by the veteran
could be attributed to a known clinical diagnosis under a different,
hypothetical set of facts which are not actually present in the veteran's
case.").

Thus, under § 1117 and its implementing regulation, a veteran
must demonstrate that he or she suffers from "signs or symptoms" of a
chronic disability but is without a diagnosis.  The Veterans Court's
requirement that Mr. Joyner demonstrate that he has been diagnosed
with an underlying condition that causes his disabling pain to obtain
benefits under § 1117 accordingly is directly contrary to the statute's
key requirement, as that court itself previously has recognized.  *See*
*Stankevich v. Nicholson*, 19 Vet. App. 470, 472 (2006) ("The very
essence of an undiagnosed illness is that there is no diagnosis.").  In
fact, if Mr. Joyner's neck pain had been attributed to a diagnosed
condition, he would not be entitled to presumptive service connection
under § 1117.  *See* VA Gen. Counsel Op. 8-98, at 5 ("On its face,
38 U.S.C. § 1117(a) confers no authority to grant presumptive service
connection for any diagnosed disease ….").

40

Furthermore, the statute directly addresses "muscle pain" and "joint pain," 38 U.S.C. § 1117(g)(4), (5), which the Veterans Court acknowledged "Mr. Joyner experiences." A12.   Such pain is among the "signs or symptoms that may be a manifestation of an undiagnosed illness." 38 U.S.C. § 1117(g)(4), (5); *see also* 38 C.F.R. § 3.317(b)(4), (5). Thus, "[i]f a claimant suffers disability manifested by a sign or symptom, such as joint pain, which cannot, in that veterans' case, be attributed to a known clinical diagnosis, such as arthritis, the requirement in 38 C.F.R. § 3.317(a)(1)(ii) will be met and compensation may be paid if the veteran satisfies the other statutory and regulatory criteria." VA Gen. Counsel Op. 8-98 at 3; *see also* Dep't of Veterans Affairs, Compensation for Certain Undiagnosed Illnesses, 60 Fed. Reg. 6660, 6662 (Feb. 3, 1995) ("Some veterans may present with purely subjective symptoms, which, nonetheless, establish the basis for a valid claim under the provisions of [§ 3.317]."); *Stankevich*, 19 Vet. App. at 470, 473 (remanding denial of "entitlement to service connection for chronic muscle and joint pains as manifestations of an undiagnosed illness" because the Board erred "by requiring a diagnosis of arthritis … where a diagnosis cannot be had"). As the Veterans Court elsewhere

has recognized, when Congress enacted § 1117, it "decided as a matter of policy, stemming at least in part from difficulty of proof, that, even though a Persian Gulf War veteran's symptoms may not at this time be attributed to a specific disease, the symptoms may nonetheless be related to conditions in the Southwest Asia theater of operations and, for that reason, are presumed to be service connected." *Gutierrez*, 19 Vet. App. at 8.

Congress's reason for making it easier for Persian Gulf veterans to establish service connection for disabling pain was plain.  It had been well-publicized that veterans serving in the Persian Gulf suffered from a variety of conditions, the causes of which sometimes were uncertain, and which were grouped loosely under the title of "Gulf War syndrome." Veterans' Benefits Improvement Act of 1994, Pub. L. No. 103-446, § 102(6), 108 Stat. 4645, 4647 (1994) (codified at 38 U.S.C. § 1117 note); *see also, e.g.*, David Brown, *NIH Panel Unable To Pinpoint Cause of "Gulf War Syndrome,"* Wash. Post, April 30, 1994, at A3.  Thus, in passing § 1117, Congress expressed concern that "[s]ignificant numbers of veterans of the Persian Gulf War are suffering from illnesses, or are exhibiting symptoms of illness, that cannot now be diagnosed or clearly

defined." *Id.* § 102(2), 108 Stat. at 4647 (1994).[4]  Many returning

Persian Gulf War veterans reported "nonspecific symptoms" that

included "muscle and joint pain."  H.R. Rep. No. 103-669, at 19 (1994);

indeed, such pain was among the most frequent complaints reported by

participants in the VA's Persian Gulf Health registry.  *Id.* at 27 & tbl.2.

But, Congress recognized, because those "illnesses" or "symptoms

of illness," including muscle and joint pain, often could not be

"diagnosed or clearly defined," service connection was often difficult to

prove.  Veterans' Benefits Improvement Act of 1994 § 102(2), 108 Stat.

at 4647.  So, Congress provided a mechanism to ensure that "Persian

Gulf War veterans who suffer disabilities resulting from illnesses that

cannot now be diagnosed or defined, and for which other causes cannot

---

[4] *See also id.* § 102(1), 108 Stat. at 4647 (such conditions could be
due to "expos[ure] to numerous potentially toxic substances, including
fumes and smoke from military operations, oil well fires, diesel exhaust,
paints, pesticides, depleted uranium, infectious agents, investigational
drugs and vaccines, … indigenous diseases, … multiple immunizations,"
or possibly even "chemical or biological warfare agents"); *id.* § 102(3),
108 Stat. at 4647 (pointing to the finding by the National Institutes of
Health that "the complex biological, chemical, physical, and
psychological environment of the Southwest Asia theater of operations
produced complex adverse health effects in Persian Gulf War veterans
and that no single disease entity or syndrome is apparent.  Rather, it
may be that the illnesses suffered by those veterans result from
multiple illnesses with overlapping symptoms and causes that have yet
to be defined.").

be identified," *id.* § 103(1), 108 Stat. at 4648, are "provided [with] compensation benefits to offset the impairment in earnings capacities they may be experiencing," *id.* § 102(7), 108 Stat. at 4648.  In explaining why § 1117 covers veterans of the current Gulf War as well, the VA stated that "military personnel continue to operate in Southwest Asia and continue to be exposed to potential environmental hazards, including some not experienced during the initial 1990-91 Gulf War." Training Letter 10-01, at 3, *available at* A616.

By requiring Mr. Joyner to prove not just that he suffered from signs or symptoms of a chronic disability in the form of neck pain, but that his pain could be attributed to a diagnosed condition, the Veterans Court subverted both the text of § 1117 and Congress's plainly stated purpose in passing it.  That legal error requires that the Veterans Court's decision be vacated, and the case remanded for further consideration of Mr. Joyner's entitlement to benefits under § 1117, as explained above (at 37-38).

# CONCLUSION

For the foregoing reasons, this Court should vacate and remand the decision of the Veterans Court.

Dated:  November 14, 2013          Respectfully submitted,

<u>/s/ Rachel M. McKenzie</u>
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, NW
Washington, DC 20005
(202) 339-8400

*Attorney for Claimant-Appellant*

**ADDENDUM**

**Judgment**

**Dated June 11, 2013**

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No: 11-3700

TARELL JOYNER, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

**JUDGMENT**

The Court has issued a decision in this case.  The time allowed for motions under Rule 35 of the Court's Rules of Practice and Procedure has expired.

Under Rule 36, judgment is entered and effective this date.

Dated: June 11, 2013

FOR THE COURT:

GREGORY O. BLOCK
Clerk of the Court

By: /s/ Willette Cash
Deputy Clerk

Copies to:

Patrick Berkshire, Esq.

VA General Counsel (027)

**Memorandum Decision**

**Dated May 20, 2013**

*Designated for electronic publication only*

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-3700

Tarell Joyner, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

Before HAGEL, *Judge.*

**MEMORANDUM DECISION**

*Note:  Pursuant to U.S. Vet. App. R. 30(a),
this action may not be cited as precedent.*

HAGEL, *Judge*: Tarell Joyner appeals through counsel a September 28, 2011, Board of Veterans' Appeals (Board) decision that denied entitlement to (1) an initial compensable disability rating for left patellofemoral syndrome, and (2) VA benefits for a cervical strain.[1]  Mr. Joyner's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a).  Neither party requested oral argument, nor have the parties identified issues that they believe require a precedential decision of the Court.   Because the Board provided inadequate reasons or bases for its rejection of Mr. Joyner's lay statements, the Court will vacate that portion of the September 2011 Board decision that denied entitlement to an initial compensable disability rating for left patellofemoral syndrome and remand the matter for readjudication consistent with this decision.  Because the Board did not fail to address a reasonably raised claim for benefits

---

[1]  The Board also denied entitlement to an initial compensable disability rating for post-operative reduction of a mandibular fracture and, in his brief, Mr. Joyner expressly abandons any argument related to that portion of the Board decision. *See* Appellant's Brief (Br.) at 1.  The Board dismissed seven other claims for benefits, finding that Mr. Joyner had withdrawn them, and Mr. Joyner also expressly abandons any arguments related to those claims. *See* Appellant's Br. at 1-2.  Finally, the Board remanded three additional claims for benefits, and those claims are not before the Court at this time. *See* 38 U.S.C. § 7266(a) (stating that the Court reviews only final decisions of the Board); *see also Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000) (Board remand does not constitute a final decision that may be appealed (citing 38 C.F.R. § 20.1100(b) (1999))).

under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317, the Court will affirm that portion of the September 2011 Board decision that denied entitlement to benefits for a cervical strain.

## I. FACTS

Mr. Joyner served on active duty in the U.S. Marine Corps from December 2000 to December 2004, including service in Kuwait as part of both Operation Enduring Freedom and Operation Iraqi Freedom.  An October 2002 private hospital record reveals that Mr. Joyner sought treatment for neck pain with muscle spasms and decreased range of motion.  The clinical impression was acute myofascial strain of the cervical spine, and he was treated with pain relievers and instructed to follow up with moist heat.  Mr. Joyner's service medical records indicate that, in April 2004, he was treated for a neck cramp that began 24 hours earlier.  He was treated with pain relievers, heat, stretching exercises, and four days of light duty.[2]  His separation examination revealed a normal neck but problems with his upper and lower extremities, apparently in reference to his left fifth finger and left ankle.

In March 2005, Mr. Joyner sought private treatment for neck pain after an automobile accident five days earlier.  The impression given by the examiner was simply "neck pain," Record (R.) at 332, and the treatment was pain relievers and warm compresses.

In November 2005, Mr. Joyner filed claims for VA benefits for numerous conditions, including left knee and neck disabilities.

In January 2006, Mr. Joyner underwent a VA contract examination.  He reported that he strained his neck three-and-a-half years earlier while doing some unspecified "lifting."  R. at 254.  He stated that he experiences occasional muscle spasms that get worse with repetitive use.  He reported that the pain occurs every two to three months and is not "significantly debilitating" or

---

[2] According to Mr. Joyner, his service medical records also show that he "visited sick call while in service and sought treatment for his left knee, which he claimed was injured by an accident while he was riding a threewheeler."  Appellant's Br. at 2 (citing R. at 503).  Record page 503 is not included in the record of proceedings filed by the Secretary in this case.  Given the Secretary's concession of error with respect to Mr. Joyner's claim for benefits for patellofemoral syndrome, however, the Court opted not to require the Secretary to file a substitute record of proceedings that includes page 503 (and other pages cited by Mr. Joyner but not included in the record of proceedings, *see* footnote 3, below).  Nevertheless, the Court reminds the Secretary that the record of proceedings must contain "any document from the record before the agency cited in a brief, in its entirety."  U.S. VET. APP. R. 28.1(a)(1)(B).

incapacitating.  *Id.*  The examiner found no defects in Mr. Joyner's neck–he had full range of motion without pain–and diagnosed "[c]ervical strain, resolved with no sequelae."  R. at 257.

With respect to his knee disability, Mr. Joyner reported that he developed bilateral knee pain four years prior, that he sought medical treatment and was told that he had tendonitis in both knees, and that he attributed his condition to prolonged standing and walking.  He stated that he treated his pain with over-the-counter medication.  He also reported popping in his knees that is aggravated by prolonged weight-bearing activity "such as standing and walking for about two hours without resting."  R. at 255.  He reported that his condition did not result in incapacitation.  A physical examination revealed some tenderness, but normal range of motion.  The examiner diagnosed bilateral patellofemoral syndrome and stated that Mr. Joyner would have to avoid prolonged or heavy repetitive use of his knees.

In December 2006, a VA regional office granted Mr. Joyner's claim for benefits for patellofemoral syndrome and assigned a noncompensable disability rating.  The regional office denied his claim for benefits for a cervical strain.[3]  Mr. Joyner filed a Notice of Disagreement with both determinations and ultimately appealed to the Board.

In June 2010, Mr. Joyner testified at a videoconference hearing before a Board member. When asked how his knee disability adversely affects him, Mr. Joyner responded:

> Yes[,] I do[,] because when I first came in the military[,] I was always athletic.  I had a first (. . . inaudible) [physical training] throughout my whole time, now I could no longer do things I normally could do before[,] like playing basketball or walking with my son for a long time.  I can't do that no more because of the pain on my knee.

R. at 38.  When asked why he believed he was entitled to a compensable disability rating, he replied:

> I feel I should have an increase because my son–I can't–I can't do things with my son like I normally do or do some of the activities what I used to do back in the day which I loved doing and enjoying so I can't do none of that no more[,] but I didn't have this problem before I came in but now I have it now[,] so I feel that's the reason why I should have an increase.

---

[3] This decision, cited by Mr. Joyner in his brief at page 4 and by the Secretary in his brief at page 5, as appearing at pages 190-200 in the record of proceedings, also does not appear in the record of proceedings filed by the Secretary. The Court notes that pages 89-90 of the record of proceedings (which the Court presumes is the cover letter attached to the November 2007 Statement of the Case), also cited by the Secretary at page 5 of his brief, does not appear in the record of proceedings.  Because there is no dispute as to the contents of these pages, and because they concern only background information, the Court opted not to require the Secretary to file a substitute record of proceedings.

R. at 38-39. Mr. Joyner also continued to attribute his neck pain to service. Specifically, he stated:

> I was [doing physical training] one day and the next day I woke up that morning I had a real bad cramp in my neck which I couldn't turn my neck. I couldn't turn it to the left. So since I couldn't turn it I went to the sick call and I was given medicine for it because I don't know I had a muscle spasm in my neck and that's what's causing my neck, I keep having them all the time. I've been going to the doctor for it also.

R. at 48. He reiterated that his neck was fine when he entered service and he is "living now with [his] neck hurting." *Id.*

In September 2011, the Board issued the decision on appeal. The Board determined that no initial compensable disability rating, including on the basis of functional loss due to pain, was warranted because Mr. Joyner's lay statements regarding functional limitations at the June 2010 Board hearing were inconsistent with his statements to the VA contract examiner in January 2006. The Board denied Mr. Joyner's claim for benefits for a cervical strain because it found no competent evidence of a current disability. This appeal followed.

## II.  ANALYSIS

### A. Patellofemoral Syndrome

Mr. Joyner argues, and the Secretary concedes, that the Board failed to provide adequate reasons or bases for dismissing his June 2010 Board hearing testimony as inconsistent with his earlier statements to a VA examiner. *See* 38 U.S.C. § 7104(d)(1). Specifically, the parties agree that the Board failed to account for the lapse in time between the January 2006 VA examination and the June 2010 Board hearing. The Court agrees, and that portion of the Board decision that denied entitlement to a higher initial disability rating for left knee patellofemoral syndrome will be vacated and remanded for readjudication. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

The Court notes that Mr. Joyner also argues that the Board's conclusion that his June 2010 testimony is inconsistent with his statements to the January 2006 VA examiner is not supported by adequate reasons or bases, an argument with which the Secretary "does not necessarily concur." Secretary's Br. at 7. The Court need not settle this argument at this time, however, as it has already determined that vacatur and remand is warranted. Mr. Joyner is free to raise this argument on remand. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order).

4

**A10**

On remand, Mr. Joyner is also free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).  *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).  "A remand is meant to entail a critical examination of the justification for the decision" by the Board.  *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).  In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

## B. Cervical Strain

Mr. Joyner argues that the Board erred in failing to address a reasonably raised claim for benefits under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317, which concern undiagnosed illnesses in veterans who served in the Persian Gulf.  This argument, although creative, is unpersuasive.

Section 1117 provides that the Secretary may pay disability compensation benefits to a Persian Gulf veteran with "a qualifying chronic disability" that became manifest "(A) during service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War; or (B) to a degree of 10[%] or more during the presumptive period."  38 U.S.C. § 1117(a)(1).  Relevant to the argument on appeal, the statute defines "qualifying chronic disability" as any chronic disability that results from "[a]n undiagnosed illness." 38 U.S.C. § 1117(a)(2)(A).[4] Mr. Joyner appears to contend that, because he has suffered from chronic neck pain since service, and because that pain, "[b]y history, physical examination, and laboratory tests[,] cannot be attributed to any known clinical diagnosis," 38 C.F.R. § 3.317(a)(1)(ii), the Board should have considered entitlement to benefits under section 1117.

There is no dispute that Mr. Joyner has qualifying service in the Persian Gulf.  *See* 38 C.F.R. § 3.317(e); VA Training Letter 10-01 (Feb. 4, 2010) (clarifying that 38 U.S.C. § 1117 and 38 C.F.R. § 3.317 apply "to any Veteran who served in Southwest Asia, even though [the statute and regulation] arose from Operations Desert Shield and Desert Storm"); Secretary's Br. at 11 (conceding that Mr. Joyner is "a Persian Gulf War Veteran").  The question is whether his neck pain, which he

---

[4] A qualifying chronic disability could also result from "[a] medically unexplained chronic multisymptom illness (such as chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome) that is defined by a cluster of signs or symptoms."  38 U.S.C. § 1117(a)(2)(B).  Mr. Joyner, however, does not claim that his condition meets this criterion.

asserts is chronic, is an undiagnosed illness within the meaning of section 1117 and § 3.317.  The Court concludes that it is not.

There is no evidence of record, medical or otherwise, that Mr. Joyner suffers from *any* disability, undiagnosed or otherwise.  It is well settled that pain alone–admittedly the only symptom Mr. Joyner experiences–does *not* constitute a disability.  *See Sanchez-Benitez v. Principi*, 13 Vet.App. 282, 285 (1999).  Mr. Joyner attempts, as the Secretary posits, to evade the statutory requirement that he show a current disability to establish entitlement to benefits.  *See* 38 U.S.C. § 1110.  He also attempts to conflate the absence of a disability, as stated by the VA medical examiner in January 2006, with the presence of a disability that is undiagnosed, of which there is no evidence in the record.  The evidence here is not that Mr. Joyner has a disability for which an examiner is unable to identify a cause; the evidence here is that Mr. Joyner simply does not have a disability.  These circumstances are not the same, and Mr. Joyner's circumstances did not reasonably raise a claim for benefits under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317.  *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).  Accordingly, the Board did not err in not considering that theory of entitlement to benefits.

### III.  CONCLUSION

Upon consideration of the foregoing, that portion of the September 28, 2011, Board decision that denied entitlement to an initial compensable disability rating for patellofemoral syndrome is VACATED and the claim is REMANDED for reajudication consistent with this decision.  The remainder of the Board decision on appeal is AFFIRMED.

DATED: May 20, 2013

Copies to:

Patrick A. Berkshire, Esq.

VA General Counsel (027)

6

**A12**

# CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2013, I caused

the Opening Brief and Addendum of Claimant-Appellant Tarell Joyner

to be electronically filed with the Clerk of the Court using CM/ECF,

which will automatically send notification of such filing to the following

counsel of record:

Jane C. Dempsey
Department of Justice
Commercial Litigation Branch, Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Email:  Jane.Dempsey@usdoj.gov

David J. Barrans
Deputy Assistant General Counsel
Department of Veterans Affairs
Office of General Counsel
810 Vermont Avenue, N.W., Room 1101
Washington, DC 20420
Email: david.barrans@va.gov

Martie Adelman
Department of Veterans Affairs
Office of General Counsel
810 Vermont Avenue, N.W.
Washington, DC 20420
Email: martie.adelman@va.gov

*Attorneys for Respondent-Appellee*

Dated:  November 14, 2013          Respectfully submitted,

                                   /s/ Rachel M.McKenzie
                                   *Attorney for Claimant-Appellant*

**CERTIFICATE OF COMPLIANCE
UNDER FEDERAL RULE OF APPELLATE PROCEDURE
32(a)(7) AND FEDERAL CIRCUIT RULE 32**

Counsel for Claimant-Appellant Tarell Joyner certifies that the brief contained herein has a proportionally spaced 14-point typeface and contains 8,846 words, based on the "Word Count" feature of Word 2007, including footnotes and endnotes.  Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this word count does not include the words contained in the Certificate of Interest, Table of Contents, Table of Authorities, and Statement of Related Cases.

Dated:  November 14, 2013            Respectfully submitted,

                                     /s/ Rachel M. McKenzie
                                     *Attorney for Claimant-Appellant*